## Buckner, et al. v. Tucker.

(Decided March 26, 1926.)

Appeal from Spencer Circuit Court.

1. Work and Labor.—Evidence held to support recovery by plaintiff for services rendered on stepmother's farm during period of years preceding her death.

2. Appeal and Error.—Chancellor's finding that account sued on was account stated will not be disturbed, where court, after reading evidence, is left in doubt.

EDWARDS, OGDEN & PEAK and L. W. ROSS for appellants.

J. W. CRUME for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The judgment appealed from by the administrator of the estate of M. Betty Tucker, was entered in an action upon an account stated. The deceased, M. Betty Tucker,

by will made in 1920, and thereafter duly probated in the Spencer county court, devised most of her property to appellant, Betty Ruth Buckner, a namesake, but she gave to appellee, Arthur Tucker, some horses and other personal property. Later he brought this action claiming that the estate of Mrs. M. Betty Tucker was indebted to him for work and labor performed for her, and for money and provisions furnished her to an amount exceeding $500.00. The deceased was the second wife of appellee, Tucker's father, and after the death of his father, about 1905, he entered into an arrangement with his stepmother, the deceased, by which he was to live at the old home with her and to cultivate the farm upon the shares; that as a part of the contract he agreed to do other work upon the farm for his stepmother at the rate of $1.00 per day; that in addition to the work done he furnished her some provisions and loaned her money from time to time as she needed it, beginning in the year 1906, and continuing until her death in 1920. He averred and undertook to prove that at the end of each year he and his stepmother had a full and complete settlement of all their accounts; that she did not pay him but little on the account and that the balance was carried forward each year, the deceased acknowledging at each settlement the correctness thereof, agreeing to pay the amount found to be due by her to him and that on January 1, 1920, he and his stepmother had a full and complete settlement of their accounts, which showed that she was indebted to him at that time in the sum of $499.50; that thereafter he furnished some woven wire fencing, some barbed wire for fencing, and furnished her some cash and did some work, amounting in all to a little more than $30.00, which sum, added to the amount due on January 1st of that year, made a total of $530.85; that she paid him on January 1, 1920, after the account had been cast up a small sum, and again in April, 1920, paid him $5.00 on the account.

The answer of the administrator traversed the averments of the petition and by a second paragraph pleaded the statute of limitations as to all the claims of appellee arising before the 22nd day of October, 1917, being the five-year statute. By the third paragraph of the answer it was averred that the father of appellee, Tucker, resided at the old home place until November, 1911, the time of his death, and during that time had full charge and control of the farm, and that the administrator could not be charged with any part of the account arising before that

date because the husband, then the owner and in charge of the farm, was liable for any work done by appellee on the place during those years.

The case was prepared by the taking of proof in depositions. On its submission the court entered judgment in favor of appellee, then plaintiff, Arthur Tucker, for $526.35, with interest from October 30, 1922, until paid. From that judgment this appeal is prosecuted. The evidence for appellee proved beyond question that he lived with his stepmother from 1906 until her death in 1920, and during that time cultivated and managed the farm. It is also proven that he did a great deal of work on the place outside of making crops, and that his stepmother frequently spoke of the fact that she had him employed to do such service and that she owed him for it. That he performed the services there can be no doubt. The sum claimed per year is a small one when it is remembered that it covers services from 1906 to 1920. One witness, a brother of appellee, testifying for appellee, said that in the fall of 1905 he and his brother entered into an arrangement with their father and stepmother whereby appellee was to live at the old home and to cultivate part of the lands; that appellee and witness did some clearing of new land and the appellee was to have his board and a dollar per day for the days he worked for his stepmother outside of the crops; that the stepmother and father were in bad health and the farm in bad shape, and the old people needed assistance; that after this arrangement ran along for a while he heard his stepmother say "that she already owed Arthur for building a barn on the place the year before and for some money he had loaned her; that she had got behind and looked like she could not get him paid; she was to pay my brother a dollar a day for his work and board him. I didn't get anything for the work I did. On another occasion I heard her say she owed Arthur for cutting the logs and hauling logs and lumber and helping to build the barn; that was in 1907, and a number of times after that I heard her say she owed him and didn't have the money to pay him. . . . She said she owed Arthur about $500.00 and it looked like she would not be able to pay it, said she owed him for his work and for some money she had borrowed from him, but she says:

" 'I reckon if I don't get to pay him while I am living, he will get it when I die.' "

Further testifying the same witness said: "Ma was a woman that worried about her business. I don't know just exactly how it come up. Another time, I don't remember the year, she covered her house; I built a house that year, and when we got done she wanted her house covered and she had me come up there and help and I took three hands, Mr. Kennedy, Bob Smith and Red Cissell, and she borrowed $20.00 from Arthur that time to pay the hands." The witness was then asked: "Q. What, if anything, do you know about her borrowing a sum of money in the amount of $86.00 from your brother, Arthur? A. I didn't see her borrow it; I just know this, I let him have that much money that was coming to him after we quit business down here, we run a store together, and I heard her say she owed him for borrowed money."

There is much other evidence to the same effect. The judgment is, therefore, abundantly supported by the evidence, though there is evidence to the contrary.

Appellant insists that this is an account stated, while appellants say that it is merely an open account, and that the greater portion of it is barred by limitations. Bouvier says that an account stated is an agreed balance of accounts; an account which has been examined and accepted by the parties. Such an account is deemed conclusive between the parties, unless some fraud, mistake or plain error is shown; and in such case, generally, the account will not be opened, but liberty to surcharge or falsify will be given.

If, as contended by appellee, the parties to the oral contract which is the basis of this action had a full and complete settlement of their accounts at the end of the year, and the same was set down in writing, and accepted and agreed to by both parties as correct, the amount of each previous year being carried forward, no part of the account is barred by limitation, for the statute does not run against an account which is acknowledged by the debtor at such frequent intervals, and especially when the debtor makes frequent though small payments on the account, as in this case. The evidence is not altogether satisfactory, but the chancellor, who saw and heard the witnesses and is presumed to have personal knowledge of their credibility, accepted the testimony offered by appellee, Arthur Tucker, as true and correct, and rested his judgment on it. This court is in no position to say that the chancellor was not correct in his appraisal of the

testimony. In such cases, where, after reading the evidence, this court is left in doubt as to the true facts, the finding of the chancellor will not be disturbed. As only a question of fact is involved, except for the question of the running of the statute of limitations, and that question has been determined in favor of appellee, the judgment must be affirmed.

Judgment affirmed.